2334   WALKER *v.* CITY COUNCIL OF DAWSON.

The finding of the city council was without any evidence to support it, and the judge of the superior court erred in not sustaining the certiorari.

Certiorari; from Terrell superior court—Judge Worrill.   December 24, 1909.

Submitted January 13,—Decided February 10, 1910.

*L. C. Hoyl, H. A. Wilkinson,* for plaintiff in error.

*W. H. Gurr, solicitor,* contra.

HILL, C. J.   Walker was convicted by the mayor of the city of Dawson of the violation of a certain city ordinance.   He appealed from this judgment to the city council of Dawson, the judgment was affirmed, and he brought a petition for certiorari to the superior court, and, the certiorari being overruled, he brings error to this court.   The ordinance which he was convicted of having violated is in the following language: "It shall be unlawful for any person to keep or have in his or her possession, within the limits of the city of Dawson, any spirituous, vinous, or malt liquors, intoxicating beverages, or other drinks of like character, for the purpose of disposing of such for the purpose of inducing trade, or by sale or barter.   It shall be unlawful for any person or persons to have any room or place in said city for the purpose of social drinking, or for the purpose of keeping any drinks therein that are intoxicating in their nature, or to keep intoxicating liquors in any restaurant or other place of business for the benefit or convenience of customers, or to run any club or private room where intoxicating drinks are served or permitted to be served, or liquors stored for drinking.   It shall be unlawful for any person to act as agent for the purpose of delivering whisky or other intoxicating drinks to another within the limits of the city of Dawson."

The evidence set out in response to the writ of certiorari is in substance as follows:   On Christmas eve three police officers of the city of Dawson went to the private residence of the defendant. He was a carpenter by trade, but kept no place of business.   He was not at home.   They went into his private residence and found a box in the closet in his kitchen, containing 25 pints of corn whisky, and, in the attic of one of the rooms, about two dozen quarts of rye whisky in quart bottles.   In the kitchen and in the other rooms of the house and under the house were also found a

27

large number of empty bottles and also some empty crates or cartons. The crates or cartons and empty bottles found in the house are sometimes filled and used for other purposes than as receptacles for intoxicating liquors. These officers had no search warrant, and did not testify that they had any reason to suspect that the law was being violated by the defendant in his private residence. In explanation of his possession of the whisky, the defendant stated, in substance, that he was to have a marriage feast at his house, and that he had his part of the whisky for the purpose of entertaining his guests, and that some whisky belonged to several of his neighbors, he having purchased the same for them when he purchased his own, the entire shipment being consigned to him. The petition for certiorari alleges that the conviction of the defendant was without any evidence, and also challenges the validity of the ordinance, on the ground that it made penal the same acts which constituted an offense under the criminal statute of the State known as the prohibition law; also on the ground that the ordinance was ultra vires and was contrary to public policy and an infringement on personal liberty; also for the reason that the State having licensed locker clubs, they can not be prohibited by a municipality, either directly or indirectly; and that the entire ordinance "was unreasonable, unjust, inequitable, and illegal." The mayor and the city council both found that the defendant was guilty generally, without specifying the particular part of the ordinance that had been violated; and the entire ordinance, therefore, in connection with the evidence, is brought under review.

1. That part of the ordinance which makes it a penal offense to keep intoxicating liquors in any restaurant or other place of business for the benefit or convenience of customers is clearly covered by the State law, and is for that reason not enforceable by the city. That part of the ordinance, however, has no application to the facts of the case, for the testimony is undisputed that the whisky was not in the place of business of the defendant, but in his private residence. The ordinance, with this exception, reasonably construed, is a proper exercise of the police power of the municipality. If, however, the ordinance, or any part thereof, was intended to prohibit any citizen of the city of Dawson from keeping or storing intoxicating liquors in his private residence for the purpose of social drinking, or was intended to prevent the keep-

ing of intoxicating liquors in a private locker of a social club, or was intended to make it a penal offense for one citizen to order intoxicating liquors for another citizen from outside of the State, the ordinance, so construed, would be an unreasonable interference with the rights of the citizen, and would be a wholly unwarranted exercise of arbitrary power, masquerading under the flexible and elastic phrase of "police power." Neither the State nor any municipality in the State can forbid a citizen from keeping intoxicating liquors at his own private residence for the use of himself, his family, and his guests, nor lawfully prevent a citizen of this State from purchasing intoxicating liquors from beyond the limits of the State, both for himself and for his friends, or from having the same shipped to this State and delivered in original packages to the purchaser. The State and any municipality thereof may have the power to prohibit any citizen from purchasing intoxicating liquor inside the limits of the State, or inside the corporate limits of the city, by virtue of the police power, for the same reason that they have power to prohibit its sale by any person within the limits of the State or the municipality; but this power has not yet been exercised.

The learned attorney for the city insists that, under the facts of the case, the defendant violated the last section of the ordinance, which makes it unlawful for any person "to act as agent for the purpose of delivering whisky or other intoxicating drinks to another within the limits of the city of Dawson." We do not think that the act of the defendant in buying some whisky for several of his neighbors when he bought his own was a violation of this part of the ordinance. Such interpretation, we think, would be an unauthorized construction of this part of the ordinance. The ordinance was intended to prohibit a citizen from acting as agent for the seller, or generally as an agent for the buyer. We think the evidence in the record, if it proves any violation of the ordinance, is applicable to that part of the ordinance which makes it a penal offense to "keep or have in his or her possession, within the limits of the city of Dawson, any spirituous, vinous, or malt liquors, intoxicating beverages, or other drinks of like character, for the purpose of . . sale or barter." But we do not think that the evidence is sufficient to show that the defendant violated this part of the ordinance. The mere finding of intoxicating liquors

in a private residence, even in large quantities, does not of itself prove that such liquor was kept there by the owner of the residence for the purpose of sale or barter, nor reasonably give rise to any such presumption.    There should be some evidence of a sale (one would be enough), or some circumstances indicating that the un-lawful traffic in liquor was there carried on, to justify such a con-clusion,—such as that he himself was an idler, without legitimate occupation, or that his house was frequented by men. The finding of empty bottles and empty crates or cartons in the house or under the house would not prove or tend to prove, in the absence of any proof of sale or of other indicia of sale, that the unlawful traffic in liquor was carried on in the house.    The presence of all these articles is entirely consistent with the lawful use of intoxicating liquors by the owner of the house.    The quantity of liquor on hand might be considered large, but this fact indicates only that the owner was himself a liberal drinker or a generous entertainer. When we consider the reasonable and natural inferences that might be drawn from all the facts and circumstances proved in this case, entirely consistent with innocence, in connection with the de-fendant's undenied explanation of the possession of the quantity of liquors found in his house on the occasion of the raid made by the police, the conclusion seems inevitable that his conviction was wholly without any evidence to support it.    We do not think a citizen is called upon to make any explanation of the possession of liquor found in his house, when there is no evidence that it was stolen or being unlawfully used.    Probably in one half of the homes in this State, if subjected to similar unlawful invasion, evi-dence of equal probative value would be found of the traffic in in-toxicating liquors; for in its last analysis the evidence was that about thirty quarts of intoxicating liquor were found in the pri-vate residence of a citizen of a reputable and remunerative trade, a fact of no criminal significance in a prohibition State.    The evi-dence in this case shows a most unwarranted and unlawful viola-tion by the police officers of the rights of a private citizen.    This court fully sympathizes with the strictest enforcement, by the State and by municipalities, of laws against unlawful traffic in in-toxicating liquors.    The writer of this opinion personally believes that all laws intended to prevent the evils of intemperance and the illegal traffic in intoxicating liquors are beneficent in purpose and

in results; but in zealous efforts to enforce these laws, however beneficent, other laws equally valuable and binding should not be violated. In laudable purpose to protect society, we should not become indifferent to or regardless of those fundamental rights of the individual, "personal liberty, personal security, and · private property." The promotion of the one and the prosecution of the other are entirely consistent and interdependent. The home of the citizen, next to the temple of God, is the most sacred place on this earth, whether that home be the cottage of the poor and humble, or the palace of the rich and powerful. It is protected by the constitution of the United States and the constitution of this State, which declare that "the right of the people to be secure in their persons, houses, and effects, against unreasonable searches and seizures, shall not be violated, and no warrant shall issue except on probable cause supported by oath. Civil Code, §§ 5713, 6017. No act is more obnoxious to our fundamental law than the unlawful entry and search of a man's private dwelling, based upon a bare suspicion that a criminal offense has been committed; and where it is done confessedly without any color of authority, and without even a suspicion that the law is being or has been violated, it should meet with, as it fully deserves, the unqualified denunciation of the courts, and the offenders should be punished for thus overstepping the bounds of official authority. *Williams* v. *State,* 100 *Ga.* 525 (28 S. E. 624, 39 L. R. A. 269); *Pickett* v. *State,* 99 *Ga.* 12 (25 S. E. 608, 59 Am. St. R. 226).

Instead of being the conservators of the law, such officials become its violators in the most reprehensible and dangerous form. It is the proud boast of the Anglo-Saxon that a man's home is his castle, protected by the omnipresent and omnipotent, although invisible, spirit of the law,—a protection, in a land where the people are truly free, more invincible than armed men or granite walls. In this case it is shown by the undisputed evidence that without any authority of law, and, so far as the record discloses, without any reason to suspect that the law was being violated therein, the private home of a citizen, in his absence, was raided and his property found therein unlawfully taken therefrom. The officers who thus invaded the sanctity of this man's home committed a double trespass,—a trespass against his personal security, and a trespass against his private property. If such unlawful invasions of the

citizen's rights are to be tolerated or condoned, or can escape the severest condemnation of all who love free institutions and believe in the preservation of the inalienable, individual rights of the citizen, the struggle of the centuries will have been in vain, and the sacred precincts of the home will be at the mercy of every official who imagines that his office alone clothes him with authority to disregard the commands and restraints of the law, and that in becoming its minister he ceases to be its servant. Let him remember that the law is the ruler of us all, the official as well as the citizen; and when either wilfully disobeys its mandate, he is a criminal richly deserving punishment. *Judgment reversed.*

POWELL, J., dissenting. This plaintiff in error had more liquor on hand than an ordinary day-laborer (and such the evidence shows him to be) would be expected to have for legitimate purposes. His explanation was not at all satisfactory. Any man, rich or poor, who has whisky and whisky bottles hidden around in his house from cellar to attic has no legal cause of complaint if the tribunal trying the case happens to hold more than a bare suspicion that he has been using it illegitimately.